IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | **I N D I C T M E N T** |
| v. | Case No. _____ |
| STEPHAN TODD REISINGER | Violation:  18 U.S.C. § 1505 |

## INTRODUCTION

1. Nabors Completion & Production Services Company ("NCPS") was incorporated in Delaware and had a principal office in Houston, Texas. NCPS provided oilfield services to oil wells that were in their completion or production phases, and operated in oilfields across the country, including in the Bakken oilfield of North Dakota and Montana.

2. Stephan Todd Reisinger was a Maintenance Manager at NCPS, and supervised approximately 40 employees at the NCPS facility in Williston, North Dakota.

3. Dustin Payne was a welder in the maintenance department. Payne and two other welders worked in the weld bay.

### Occupational Safety and Health Act

4. The United States Department of Labor ("DOL") was a department and agency of the executive branch of the United States Government, and was responsible for the enforcement of the laws of the United States in the area of labor and employment conditions, including the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. ("the OSH Act"). The OSH Act was designed to assure safe and healthful working conditions.

5. The Occupational Safety & Health Administration ("OSHA") was an agency of the DOL, and responsible for administering the OSH Act through the promulgation and enforcement of safety and health regulations covering federal and private sector workers throughout the United States.

6. NCPS was an "employer" under the OSH Act, and an entity engaged in oil and gas support services. NCPS was subject to the OSH Act and obligated to comply with all relevant safety and health regulations promulgated by OSHA.

7. The OSH Act and regulations promulgated thereunder prohibited employers from permitting employees to weld on used containers without first ensuring that they had been cleaned so thoroughly as to make absolutely certain that there were no flammable materials present or any substances which when subjected to heat, might produce flammable vapors. 29 C.F.R. § 1910.252(a)(3)(i).

8. The OSH Act and its implementing regulations further prohibited welding on used containers that had not been vented to permit the escape of air or gases before preheating, cutting or welding. 29 C.F.R. § 1910.252(a)(3)(ii).

9. OSHA was empowered to conduct investigations into violations of worker safety standards and issue citations and penalties for those violations. 29 U.S.C. §§ 657-59. OSHA had six months to complete its compliance investigation. 29 U.S.C. § 658(c).

## Factual Background

10. On October 3, 2014, a truck mechanic brought a tank truck with a small, leaking hole in the back to the weld bay so that it could be repaired. The tank trailer was

backed into the weld bay. When Payne attempted to weld on the tank, heat or sparks caused a flammable vapor mixture inside the tank to ignite, causing an explosion. The back hatch was blown off of the tank and struck Payne in the abdomen, causing severe injury. Payne was flown by helicopter to a hospital in Minot, North Dakota, for treatment, where he died five days later.

11. The tank had previously been used to transport "produced water," an oil well wastewater that contains a mixture of water, salts, and residual hydrocarbons. The tank had been emptied, but hydrocarbon residues remained inside the tank and created an explosive atmosphere.

12. Contrary to the requirements of the OSH Act welding regulations, the tank that exploded had been neither cleaned nor vented before the attempted welding repair.

13. The tank repair that Payne attempted also violated NCPS's written policy regarding welding safety, which had been adopted for the express purpose of achieving compliance with the OSHA welding regulations. Contrary to the provisions of the NCPS policy, the attempted welding repair occurred on an uncleaned and improperly prepared tank, and the tank had not been tested to determine if a potentially explosive atmosphere was present.

14. The welding repair that killed Payne was not the first such repair performed by NCPS welders. NCPS welders had previously performed welding repairs on multiple leaking water tanks without the required cleaning and testing.

15. Contrary to the NCPS prerequisites for employees performing welding work, none of the three welders in Williston possessed the requisite prior professional welding

experience nor the knowledge of applicable welding safety standards, including the standard regarding the inspection and preparation of tanks prior to welding.

16. Also contrary to the NCPS hot work policy, neither the welders nor their supervisors had received specialized training on welding safety, including any specialized training on tank welding.

17. NCPS failed to: (1) properly supervise the welding work at the Williston facility; (2) require welders to obtain hot work permits from supervisors; and (3) provide welders with equipment necessary to adequately conduct atmospheric testing prior to welding.

18. OSHA began an investigation on October 9, 2014, the day after Dustin Payne's death. On that day, an OSHA inspector conducted an inspection of the Williston facility. The OSHA investigation included document requests and employee interviews, including an interview of Reisinger on December 11, 2014.

## Obstruction of OSHA Proceeding

The Grand Jury Charges that on or about December 11, 2014, in the District of North Dakota and elsewhere,

STEPHAN TODD REISINGER

did corruptly obstruct, impede, and endeavor to obstruct and impede, the due and proper administration of the law under which a pending proceeding was being had before the Occupational Safety and Health Administration, an agency of the United States, that is, Stephan Todd Reisinger, falsely stated in a December 11, 2014 interview with OSHA that: (1) prior to October 3, 2014, he was not aware of any other welding on the produced water trailer tanks at the NCPS facility in Williston; (2) "[w]e had never brought any tanks" to NCPS employees, "any cargo tankers, to weld, since I've been here;" (3) prior to October 3, 2014, the issue of leaking produced water trailer tanks had not been brought to his attention; (4) had the issue of leaking produced water trailer tanks been brought to NCPS's attention, the tanks would have been sent to an off-site third party company for repairs; (5) prior to October 3, 2014, he "did not" know that there were hazards associated with welding on produced water trailer tanks; (6) he thought "[j]ust water" and "H20" was in the tanks; and (7) Reisinger concealed from OSHA that almost all work orders were prepared after the work had been completed and therefore there was no opportunity for management to identify potential safety issues prior to the work being performed.

In violation of Title 18, United States Code, Section 1505.

A TRUE BILL:

_____
Foreperson

DREW H. WRIGLEY
United States Attorney

/s/ Rick L. Volk
RICK L. VOLK
Assistant United States Attorney